Randall T. Garteiser (CBN 231821)
rgarteiser@ghiplaw.com
Christopher A. Honea (CBN 232473)
chonea@ghiplaw.com
GARTEISER HONEA, P.C.
119 W. Ferguson St.
Tyler, Texas 75702
Tel: (888) 908-4400

Attorneys for Plaintiff
WAVERLY LICENSING LLC

# IN THE UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WAVERLY LICENSING LLC,<br><br>       Plaintiff,<br><br>v.<br><br>IOGEAR, INC.,<br><br>       Defendant. | Civil Case No.: 8:22-cv-1963<br><br>**COMPLAINT FOR PATENT INFRINGEMENT**<br><br>**JURY TRIAL DEMANDED** |

## ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

Waverly Licensing LLC ("Plaintiff") hereby files this Original Complaint for Patent Infringement against IOGEAR, Inc. ("IOGEAR" or "Defendant"), and alleges, upon information and belief, as follows:

GARTEISER HONEA – TRIAL ATTORNEYS

1

**THE PARTIES**

1.      Waverly Licensing LLC is a limited liability company organized and existing under the laws of the State of California with its principal place of business at 6001 West Parmer Lane, Suite 370-1165, Austin, Texas 78727.

2.      Defendant is a corporation organized and existing under the laws of the State of California with a place of business at 15365 Barranca Pkwy, Irvine, CA 92618.  Defendant may be served through its registered agent, Grace Chen, located at its headquarters at 15365 Barranca Pkwy, Irvine, CA 92618.

**JURISDICTION AND VENUE**

3.      This Court has subject matter jurisdiction over this case under 28 U.S.C. §§ 1331 and 1338.

4.      This Court has personal jurisdiction over Defendant.  Defendant has continuous and systematic business contacts with the State of California.  Defendant transacts business within this District and elsewhere in the State of California. Further, this Court has personal jurisdiction over Defendant based on its commission of one or more acts of infringement of Waverly's Patents in this District and elsewhere in the State of California.

5.      Defendant directly conducts business extensively throughout the State of California, by distributing, making, using, offering for sale, selling, and advertising its products and services in the State of California and in this District.  Defendant has purposefully and voluntarily made its business services, including the infringing systems and services, available to residents of this District and into the stream of commerce with the intention and expectation that they will be purchased and/or used by consumers in this District.

6.      Defendant maintains physical brick-and-mortar business locations in the State of California and within this District, retains employees specifically in this District for the

GARTEISER HONEA – TRIAL ATTORNEYS

purpose of servicing customers in this District, and generates substantial revenues from its business activities in this District.

7.      Venue is proper in the this District as to Defendant pursuant to at least 28 U.S.C. §§ 1391(c)(2) and 1400(b).  As noted above, Defendant maintains a regular and established business presence in this District.

GARTEISER HONEA – TRIAL ATTORNEYS

## PATENTS-IN-SUIT

1. Plaintiff is the sole and exclusive owner, by assignment, of U.S. Patent 10,938,246B2 (the "'246 Patent"), titled "Method and Apparatus for Charging a Battery-Operated Device" (hereinafter collectively referred to as "the Waverly Patents").

2. By written instruments duly filed with the United States Patent and Trademark Office, Waverly is assigned all rights, title, and interest in the Waverly Patents.  As such, Plaintiff Waverly Licensing LLC has sole and exclusive standing to assert the Waverly Patents and to bring these causes of action.

3. The Waverly Patents are valid, enforceable, and were duly issued in full compliance with Title 35 of the United States Code.

4. Mehran Moshfeghi is the sole named inventor for the Waverly Patents, who was a leading electrical engineer with Phillips Research for over a decade.

5. Mehran Moshfeghi is the named inventor on 42 U.S. Patents, many of which are assigned to international industry giant, Phillips and its many entities.

6. The Waverly Patents have been cited in 355 patents issued to well-known industry leaders, including industry giants Qualcomm, GE, Robert Bosch, Samsung, National Semiconductor Corporation, Delphi, Intel, Dell, Fitbit, Energous, California Institute of Tech, HTC and Microsoft.

7. The Waverly Patents each include numerous claims defining distinct inventions.  No single claim is representative of any other.

8. The priority date of each of the Waverly Patents is at least as early as December 25, 2009. As of the priority date, the inventions as claimed were novel, non-obvious, unconventional, and non-routine.  Indeed, the Waverly Patents overcame a number of

GARTEISER HONEA – TRIAL ATTORNEYS

specific technological problems in the industry, and provided specific technological solutions.

9.      The claims of the Waverly Patents are patent eligible under 35 U.S.C. § 101, 102, 103, and 112, as reflected by the fact that three different Patent Examiners all agreed and allowed the Waverly Patents over extensive prior art as disclosed and of record during the prosecution of the Waverly Patents. *See Stone Basket Innov. v. Cook Medical,* 892 F.3d 1175, 1179 (Fed. Cir. 2018) ("when prior art is listed on the face of a patent, the examiner is presumed to have considered it") (citing *Shire LLC v. Amneal Pharm., LLC,* 802 F.3d 1301, 1307 (Fed. Cir. 2015)); *Exmark Mfg. v. Briggs & Stratton,* 879 F.3d 1332, 1342 (Fed. Cir. 2018).

10.     After giving full proper credit to the prior art and having conducted a thorough search for all relevant art and having fully considered the most relevant art known at the time, the United States Patent Examiners allowed all of the claims of the Waverly Patents to issue. In so doing, it is presumed that Examiners used their knowledge of the art when examining the claims. *See K/S Himpp v. Hear-Wear Techs., LLC,* 751 F.3d 1362, 1369 (Fed. Cir. 2014).  It is further presumed that Patent Examiners had experience in the field of the invention, and that the Patent Examiners properly acted in accordance with a person of ordinary skill.  *In re Sang Su Lee,* 277 F.3d 1338, 1345 (Fed. Cir. 2002).

11.     The claims of the Waverly Patents are novel and non-obvious, including over all non-cited art that is merely cumulative with the referenced and cited prior art.  *See* 37 C.F.R. § 1.56(b) (information is material to patentability when it is not cumulative to information already of record in the application); *see also AbbVie Deutschland GmbH v. Janssen Biotech,* 759 F.3d 1285, 1304 (Fed. Cir. 2014); *In re DBC,* 545 F.3d 1373, 1382 (Fed. Cir. 2008).  Likewise, the claims of the Waverly Patents are novel and non-obvious, including

over all non-cited contemporaneous state of the art systems and methods, all of which would have been known to a person of ordinary skill in the art, and which were therefore presumptively also known and considered by the Examiners.  *See, e.g., St. Clair I.P. Consultants v. Canon, Inc.,* 2011 WL 66166 at *6 (Fed. Cir. 2011); *In re Sang Su Lee,* 277 F.3d 1338, 1345 (Fed. Cir. 2002); *In re Koninklijke Philips Patent Litigation,* 2020 WL 7392868 at *19 (N.D. Cal. 2020); *Standard Oil v. American Cyanamid,* 774 F.2d 448, 454 (Fed. Cir. 1985) (persons of ordinary skill are presumed to be aware of all pertinent prior art).

## THE ACCUSED INSTRUMENTALITIES

12.     Upon information and belief, Defendant makes, sells, advertises, offers for sale, uses, or otherwise provides a plurality of electronics with circuitry for transferring data covered by the Waverly Patents, including the IOGEAR USB-C Docking Station with Power Delivery 3.0, as represented below in Figure 1, including all augmentations to these platforms or descriptions of platforms. Collectively, all the foregoing is referred to herein as the "Accused instrumentalities."



**Figure 1 – Screenshot of Defendant's webpage for the IOGEAR USB-C Docking Station with Power Delivery 3.0 located** https://www.iogear.com/product/GUD3C05/.

13.    The Accused Instrumentalities practice a method of charging a battery-operated device (e.g., a Macbook, tablet, a smartphone, etc.) including a battery (e.g., a battery of macbook), an electronic circuitry (e.g., circuitry for camera, display, etc. of the macbook) configured to be powered by the battery (e.g., a battery of macbook), and a converter (e.g., converting power from USB to battery charging) configured to receive energy from any of a plurality of authorized chargers (e.g., the accused product), and generate power from the energy for charging the battery (e.g., a battery of macbook) using the power.

**Innergie 45H Compatible Devices** for your reference:
Please use "Ctrl + F" to find your model

**Phone:**
**For iPhone:** iPhone 14,14 Plus, 14 Pro,14 Pro Max, iPhone 13 , 13 Mini , 13 Pro , 13 Pro Max , iPhone 12 , Pro , mini , Pro Max , SE 2020 , 11 , 11 Pro , 11 Pro Max , XS , XS Max , XR , X , 8 Plus , 8 , 7 Plus , 7 , 6 Plus
**For Samsung:** Galaxy S22, S21 , S21+ , S21 Ultra , Galaxy S10 , S10+ , S10e , S9 , S9+ , S8 , S8+, Note 20 , 20 Ultra , 10 , 9 , 8 (This charger support PD 3.0(PPS))
**For Sony:** Xperia 1 IV, Xperia PRO-I, Xperia 1 III, Xperia 5 III, Xperia 5 II, Xperia 5, Xperia 10 IV, Xperia 10 III, Xperia 10 II
**For Google:** Pixel 6 Pro, 6, 6a

**Tablet:**
iPad Pro 12.9-inch (1st-5th generation) , iPad Pro 11" (1st-3rd generation) ,iPad Pro 10.5-inch , iPad mini (5th-6th generation) , iPad 8th (7th-9th generation) , iPad Air 3rd-5th generation
Samsung Tab A , 4 , S6 , S5 , S5e , S4 , S3; Lenovo Tab M10 , P10 , M8 , V7 , E10 , E7; Google Pixel Slate 12.3 "; Fire HD 10 , Fire HD 8 , Fire 7; Ignite

**Notebook:** Support all 30W 45W USB-C laptops
**Apple:** MacBook Air (M2, 2022), MacBook Air (M1, 2020), MacBook Air (Retina, 13-inch, 2020), MacBook Air (Retina, 13-inch, 2018 – 2019). MacBook (Retina, 12-inch, Early 2015 – 2017)

**Dell:** Latitude 5320, Latitude 7200 2-in-1, Latitude 7210 2-in-1, Latitude 7310, Latitude 7320 Detachable, XPS 13 (7390), XPS 13 (7390) 2-in-1, XPS 13

https://myinnergie.com/us/product/45h-45w-dual-usbc-usb-power-adapter/

Innergie          One For All ▾      Laptop ▾      Mobile ▾      Accessory ▾      Brand Story ▾      Support ▾              🔍  👤

Notebook: Support all 30W 45W USB-C laptops
**Apple:** MacBook Air (M2, 2022), MacBook Air (M1, 2020), MacBook Air (Retina, 13-inch, 2020), MacBook Air (Retina, 13-inch, 2018 – 2019). MacBook (Retina, 12-inch, Early 2015 – 2017)

**Dell:** Latitude 5320, Latitude 7200 2-in-1, Latitude 7210 2-in-1, Latitude 7310, Latitude 7320 Detachable, XPS 13 (7390), XPS 13 (7390) 2-in-1, XPS 13 (9300), XPS 13 (9370), XPS 13 (9380), Chromebook 11 3100, Chromebook 13 3380, Chromebook 14 3400, Latitude 3310 2-in-1,Latitude 3390 2-in-1,Latitude 5290 2-in-1,Latitude 7200 2-In-1,Latitude 7210 2-in-1,Latitude 7285 2-in-1,Latitude 7390 2-in-1,Vostro 14 5000 (5490),Vostro 15 5000 (5590)

**HP:** HP Chromebook 13 G8 EE / 11A G8 EE / 11 G7 EE / 11 G6 EE / 11A G6 EE /13 G1 / 14 G1 /14 G5/14 G6 / X360 11 G1 EE / x360 11 G2 EE / HP Chromebook X360 11A-NB0000 12B-CA0000: 11a-nb0013dx 12b-ca0010nr, HP Spectre x2 12-A000 12-AB000 13-C000:12-a001tu 12-a001cy 12-a001dx 12-a008nr 12-a009nr 12-ab010nr 12-c012dx 12-c052nr 12-c053nr, HP Elite x2 x360 1012 G1/1012 G2/1030-G3/1030-G4/210 G2 Laptop,HP Envy X2 12-E000 13-G000:12-e011nr 12-e068ms 12-e091ms 12-g018nr

**Lenovo:** ThinkPad 13 2nd Gen, X1 Tablet 2nd Gen,X1 Yoga 2nd Gen,X1 Carbon 5th Gen, Chromebook 500e, Yoga 920 720, X1 Carbon, ThinkPad T470 T570 T495s E470 E480 E485 E490 E490s E575 E580 E585 E590 E595 20KS 20KV 20NB 20NB004GUS 20NB004GUS 20NB004HUS, 01FR024 01FR025 01FR028 04T0753 42T5008 SA10M13945 ADLX65YCC3A

**Other:**
AirPods; Apple Watch; Switch; Wireless headphones and more.

GARTEISER HONEA – TRIAL ATTORNEYS

1    https://myinnergie.com/us/product/45h-45w-dual-usbc-usb-power-adapter/

2

3

4

5

6

7

8

9    https://myinnergie.com/us/product/45h-45w-dual-usbc-usb-power-adapter/

10



11

12

13

14

15

16

17    https://myinnergie.com/us/product/45h-45w-dual-usbc-usb-power-adapter/

18

19

20

21

22

23

24    https://myinnergie.com/us/product/45h-45w-dual-usbc-usb-power-adapter/

25

26

27

28

GARTEISER HONEA – TRIAL ATTORNEYS

| Charging Protocol | Dimensions & Weight | InnerShield™ |
|---|---|---|
| PD3.0 | Height 56mm (2.2inches) | OCP (Over Current Protection) |
| PD3.0(PPS) | Width 56mm (2.2inches) | OVP (Over Voltage Protection) |
| QC3.0 | Depth 28mm (1.1inches) | OTP (Over Temperature Protection) |
| QC4.0 | Weight 126g (4.4oz) | OPP (Over Power Protection) |
| Apple Mode | | SCP (Short Circuit Protection) |

https://myinnergie.com/us/product/45h-45w-dual-usbc-usb-power-adapter/

14.     An exemplary device could be a Macbook, which  comprises circuitries for trackpads,

display system, etc. which are powered by the battery of the device.

https://www.apple.com/shop/buy-mac/macbook-pro



New

# Customize your 13-inch MacBook Pro - Space Gray

Apple M2 chip with 8-core CPU, 10-core GPU, 16-core Neural Engine

8GB unified memory

256GB SSD storage

13-inch Retina display with True Tone

Two Thunderbolt / USB 4 ports

Touch Bar and Touch ID

Backlit Magic Keyboard - US English

Force Touch trackpad



GARTEISER HONEA – TRIAL ATTORNEYS

13-inch MacBook Pro          USB-C Charge Cable (2 m)          67W USB-C Power Adapter

https://www.apple.com/shop/buy-mac/macbook-pro

*Source: Macbook Pro internal image*



New

M2

8-Core CPU
10-Core GPU
8GB Unified Memory
256GB SSD Storage[1]

16-core Neural Engine
13-inch Retina display with True Tone
Two Thunderbolt / USB 4 ports
Magic Keyboard
Touch Bar and Touch ID
Force Touch trackpad

$1,299.00

https://www.apple.com/shop/buy-mac/macbook-pro

GARTEISER HONEA – TRIAL ATTORNEYS

15.    The Accused Instrumentalities charge a battery of a battery-operated device (e.g., macbook) in compliance with USB PD 3.0 charging standard.  The USB PD 3.0 standard provides the same output power support as the USB PD 2.0 and in addition provides programmable power supply (PPS) and is backward compatible with USB PD 2.0 for charging the battery.

| Version ⇕ | USB BC 1.2 ⇕ | USB PD 1.0 ⇕ | USB PD 2.0 ⇕ | USB PD 3.0 ⇕ | USB PD 3.0 PPS ⇕ | USB PD 3.1 ⇕ |
|---|---|---|---|---|---|---|
| Release date | 2010 | 2012 | 2014 | 2015 | 2017 | 2021 |
| USB type | USB Type-A | USB Type-A, USB Type-B | USB Type-C | USB Type-C | USB Type-C | USB Type-C |
| Output support | 5V1, 5A | | 5V 3A, 9V 3A, 15V 3A, 20V 2.25A, 20V 3A, 20V 5A | 5V 3A, 9V 3A, 15V 3A, 20V 2.25A, 20V 3A, 20V 5A | 5V 3A, 9V 3A, 15V 3A, 20V 2.25A, 20V 3A, 20V 5A PPS: 3.3V-5.9V 3A, 3.3-11V 3A, 3.3-16V 3A, 3.3-21V 3A, 3.3-21V 5A | 5V 3A, 9V 3A, 15V 3A, 20V 3A, 20V 5A PPS: 3.3-5.9V 3A, 3.3-11V 3A, 3.3-16V 3A, 3.3-21V 3A, 3.3-21V 5A AVS: 15-28V 5A, 15-36V 5A, 15-48V 5A |

https://www.thephonetalks.com/usb-pd-2-0-vs-3-0-vs-3-1/

GARTEISER HONEA – TRIAL ATTORNEYS



https://www.electronicproducts.com/the-basics-of-usb-battery-charging-a-survival-guide/#

### 2.3    Compatibility with Revision 2.0

Revision 3.0 of the USB Power Delivery specification is designed to be fully interoperable with *[USBPD 2.0]* systems using BMC signaling over the *[USB Type-C 2.0]* connector and to be compatible with Revision 2.0 hardware.

This specification mandates that all Revision 3.0 systems fully support Revision 2.0 operation. They must discover the supported Revision used by their Port Partner and any connected Cable Plugs and revert to operation using the lowest common Revision number (see Section 6.2.1.1.5).

This specification defines Extended Messages containing data of up to 260 bytes (see Section 6.2.1.2). These Messages will be larger than expected by existing PHY HW. To accommodate Revision 2.0 based systems a Chunking mechanism is mandated such that Messages are limited to Revision 2.0 sizes unless it is discovered that both systems support the longer Message lengths.

*Source: USB PD 3.0 specification.PDF*

16.    The accused product charges a battery of a battery-operated device (e.g., smartphone, macbook, etc.). The device receives energy from a charger (e.g., the accused product) which provides messages according to USB PD standards to indicate its charging capabilities and specification revision value. After selection of the common specification revision level and negotiation of power requirements, it generates power for charging the battery from the received energy.

GARTEISER HONEA – TRIAL ATTORNEYS

12

#### 6.2.1.1.5    Specification Revision

The *Specification Revision* field *Shall* be one of the following values (except 11b):

- 00b – Revision 1.0
- 01b – Revision 2.0
- 10b – Revision 3.0
- 11b – *Reserved*, *Shall Not* be used

To ensure interoperability with existing USBPD Products, USBPD Products *Shall* support every PD Specification Revision starting from *[USBPD 2.0]* for *SOP\**; the only exception to this is a VPD which *Shall Ignore* Messages sent with PD Specification Revision 2.0 and earlier.

After a physical or logical (USB Type-C® Error Recovery) Attach, a Port discovers the common Specification Revision level between itself and its Port Partner and/or the Cable Plug(s), and uses this Specification Revision level until a Detach, Hard Reset or Error Recovery happens.

After detection of the Specification Revision to be used, all PD communications *Shall* comply completely with the relevant revision of the PD specification.

---

An Attach event or a Hard Reset *Shall* cause the detection of the applicable Specification Revision to be performed for both Ports and Cable Plugs according to the rules stated below:

When the Source Port first communicates with the Sink Port the *Specification Revision* field *Shall* be used as described by the following steps:

1. The Source Port sends a *Source Capabilities* Message to the Sink Port setting the *Specification Revision* field to the highest Revision of the Power Delivery Specification the Source Port supports.
2. The Sink Port responds with a *Request* Message setting the *Specification Revision* field to the highest Revision of the Power Delivery Specification the Sink Port supports that is equal to or lower than the *Specification Revision* received from the Source Port.
3. The Source and Sink Ports *Shall* use the *Specification Revision* in the *Request* Message from the Sink in step 2 in all subsequent communications until a Detach, Hard Reset, or Error Recovery happens.

**Table 6-1 Message Header**

| Bit(s) | Start of Packet | Field Name | Reference |
|--------|-----------------|------------|-----------|
| 15 | SOP* | *Extended* | Section 6.2.1.1.1 |
| 14...12 | SOP* | *Number of Data Objects* | Section 6.2.1.1.2 |
| 11...9 | SOP* | *MessageID* | Section 6.2.1.1.3 |
| 8 | SOP only | *Port Power Role* | Section 6.2.1.1.4 |
| | SOP'/SOP'' | *Cable Plug* | Section 6.2.1.1.7 |
| 7...6 | SOP* | *Specification Revision* | Section 6.2.1.1.5 |
| 5 | SOP only | *Port Data Role* | Section 6.2.1.1.6 |
| | SOP'/SOP'' | *Reserved* | Section 1.4.2.10 |
| 4...0 | SOP* | *Message Type* | Section 6.2.1.1.8 |

GARTEISER HONEA – TRIAL ATTORNEYS

### 2.6.2   Sink Operation

- At Attach (no PD Connection or Contract):
  - Sink detects Source Attachment through the presence of *vSafe5V*.
  - For a DRP that toggles the Port becomes a Sink Port on Attachment of a Source.
  - Once the Sink detects the presence of *vSafe5V* on V$_{BUS}$ it waits for a *Source_Capabilities* Message indicating the presence of a PD capable Source.
  - If the Sink does not receive a *Source_Capabilities* Message within *tTypeCSinkWaitCap* then it issues *Hard Reset* Signaling in order to cause the Source Port to send a *Source_Capabilities* Message if the Source Port is PD capable.
  - The Sink does not generate SOP' or SOP'' Packets, is not required to detect SOP' or SOP'' Packets and does not recognize them.
- Establishing PD Connection (no PD Connection or Contract):
  - The Sink receives a *Source_Capabilities* Message and responds with a *GoodCRC* Message.
  - The Sink does not generate SOP' or SOP'' Packets, is not required to detect SOP' or SOP'' Packets and **Discards** them.

---

#### 6.4.1.2   Source_Capabilities Message

A Source Port **Shall** report its capabilities in a series of 32-bit Power Data Objects (see Table 6-7) as part of a *Source_Capabilities* Message (see Figure 6-12).  Power Data Objects are used to convey a Source Port's capabilities to provide power including Dual-Role Power ports presently operating as a Sink.

Each Power Data Object **Shall** describe a specific Source capability such as a Battery (e.g. 2.8-4.1V) or a fixed power supply (e.g. 12V) at a maximum allowable current.  The *Number of Data Objects* field in the Message Header **Shall** define the number of Power Data Objects that follow the Message Header in a Data Message.  All Sources **Shall** minimally offer one Power Data Object that reports *vSafe5V*.  A Source **Shall Not** offer multiple Power Data Objects of the same type (fixed, variable, Battery) and the same voltage but **Shall** instead offer one Power Data Object with the highest available current for that Source capability and voltage.

Sinks with Accessory Support do not source V$_{BUS}$ (see *[USB Type-C 2.0]*).  Sinks with Accessory Support are still considered Sources when sourcing V$_{CONN}$ to an Accessory even though V$_{BUS}$ is not applied; in this case they **Shall** advertise *vSafe5V* with the Maximum Current set to 0mA in the first Power Data Object.  The main purpose of this is to enable the Sink with Accessory Support to get into the *PE_SRC_Ready* State in order to enter an Alternate Mode.

A Sink **Shall** evaluate every *Source_Capabilities* Message it receives and **Shall** respond with a *Request* Message.  If its power consumption exceeds the Source's capabilities it **Shall** re-negotiate so as not to exceed the Source's most recently advertised capabilities.

A Sink that evaluates the *Source_Capabilities* Message it receives and identifies a PPS APDO **Shall** periodically re-request the PPS APDO at least every *tPPSRequest* until either:

GARTEISER HONEA – TRIAL ATTORNEYS

### 6.4.1   Capabilities Message

A Capabilities Message (*Source_Capabilities* Message or *Sink_Capabilities* Message) *Shall* have at least one Power Data Object for *vSafe5V*.  The Capabilities Message *Shall* also contain the sending Port's information followed by up to 6 additional Power Data Objects.  Power Data Objects in a Capabilities Message *Shall* be sent in the following order:

1.   The *vSafe5V* Fixed Supply Object *Shall* always be the first object.
2.   The remaining Fixed Supply Objects, if present, *Shall* be sent in voltage order; lowest to highest.
3.   The Battery Supply Objects, if present *Shall* be sent in Minimum Voltage order; lowest to highest.
4.   The Variable Supply (non-Battery) Objects, if present, *Shall* be sent in Minimum Voltage order; lowest to highest.
5.   The Programmable Power Supply Objects, if present, *Shall* be sent in Maximum Voltage order, lowest to highest.

**Figure 6-12 Example Capabilities Message with 2 Power Data Objects**

| Header |  | |
|:--:|:--:|:--:|
| No. of Data Objects = 2 | Object1 | Object2 |

In Figure 6-12, the *Number of Data Objects* field is 2: *vSafe5V* plus one other voltage.

Power Data Objects (PDO) and Augmented Power Data Objects (APDO) are identified by the Message Header's Type field.  They are used to form *Source_Capabilities* Messages and *Sink_Capabilities* Messages.

Sources expose their power capabilities by sending a *Source_Capabilities* Message.  Sinks expose their power requirements by sending a *Sink_Capabilities* Message.  Both are composed of a number of 32-bit Power Data Objects (see Table 6-7).

**Table 6-7 Power Data Object**

| Bit(s) | Description | |
|---|---|---|
| B31...30 | Value | Parameter |
| | 00b | Fixed supply (Vmin = Vmax) |
| | 01b | Battery |
| | 10b | Variable Supply (non-Battery) |
| | 11b | Augmented Power Data Object (APDO) |
| B29...0 | Specific Power Capabilities are described by the PDOs in the following sections. | |

The Augmented Power Data Object (APDO) is defined to allow support for more than the four PDO types by extending the Power Data Object field from 2 to 4 bits when the B31...B30 are 11b.  The generic APDO structure is shown in Table 6-8.

**Table 6-8 Augmented Power Data Object**

| Bit(s) | Description |
|---|---|
| B31...30 | 11b – Augmented Power Datat Object (APDO) |
| B29...28 | 00b – Programmable Power Supply |
| | 01b-11b - *Reserved* |
| B27...0 | Specific Power Capabilities are described by the APDOs in the following sections. |

*Source: USB PD 3.0 specification.PDF*

## COUNT I
## Infringement of U.S. Patent No. 10,938,246

17.   Plaintiff incorporates the above paragraphs by reference.

18.   Defendant has been on actual notice of the '246 Patent at least as early as the date it received service of the Original Complaint in this litigation.

19. The damages period begins at least as early as six years prior to the date of service of the Original Complaint in this litigation.

20. Defendant manufactures, sells, offers for sale, owns, directs, and/or controls the operation of the Accused Instrumentalities and generates substantial financial revenues and benefits therefrom.

21. Defendant has directly infringed and continues to directly infringe the claims of the '246 Patent.  As exemplary, Claim 1 is by making, using, importing, selling, and/or offering for sale the Accused Instrumentalities.  Defendant directly makes and sells the infringing Accused Instrumentalities at least because it is solely responsible for putting the infringing systems into service by directing or controlling the systems as a whole and by obtaining the benefits therefrom.  More specifically, and on information and belief, with respect to the Accused Instrumentalities, Defendant:

- (i) practices and provides a method of charging a battery-operated device (e.g., a Macbook, tablet, a smartphone, etc.) including a battery (e.g., a battery of macbook), an electronic circuitry (e.g., circuitry for camera, display, etc. of the macbook) configured to be powered by the battery (e.g., a battery of macbook), and a converter (e.g., converting power from USB to battery charging) configured to receive energy from any of a plurality of authorized chargers (e.g., the accused product), and generate power from the energy for charging the battery (e.g., a battery of macbook) using the power;

- (ii) charges a battery of a battery-operated device (e.g., macbook) in compliance with USB PD 3.0 charging standard.  The USB PD 3.0 standard provides the same output power support as the USB PD 2.0 and in addition provides programmable

16

power supply (PPS) and is backward compatible with USB PD 2.0 for charging the battery;

- (iii) charges a battery of a battery-operated device (e.g., smartphone, macbook, etc.). The device receives energy from a charger (e.g., the accused product) which provides messages according to USB PD standards to indicate its charging capabilities and specification revision value. After selection of the common specification revision level and negotiation of power requirements, it generates power for charging the battery from the received energy;

- (iv) practices and provides practices receiving a charger identification from a charger (e.g., the accused product);

- (v) practices and provides determining whether the charger (e.g., the accused product) identification (e.g., specification revision value and capabilities of the charger as indicated in the Source_Capabilities message) is in a list of charger identification (e.g., specification revision value and capabilities of the charger as indicated in the Source_Capabilities message) belonging to the plurality of authorized chargers (e.g., specification revision values and source capabilities supported by the smartphone, Macbook, etc.);

- (vi) charges a battery of a battery-operated device (e.g., smartphone, tablet, etc.). The device receives energy from a charger (e.g., the accused product) which provides source capabilities and supported specification revision value. In case the charger doesn't provide a supported specification revision value, i.e., if the charger complies with USB PD 1.0, or the charger doesn't provide source capabilities requested by the smartphone, the smartphone will not consider the charger as an

GARTEISER HONEA – TRIAL ATTORNEYS

authorized charger and communication gets fail. The communication between charger and the smartphone comes to a USB default operation at zero volts;

- (vii) practices and provides such that in response to determining that the charger (e.g., the accused product) identification (e.g., identification information related to specification revision value as well as capabilities indicated in the Source_Capabilities message sent by the charger) is in a list of charger identifications (e.g., specification revision values and capabilities supported by the smartphone, macbook, etc.) and receiving the energy from the charger (e.g., the accused product);

- (viii) practices and provides generating, using the converter (e.g., converting power from USB to battery charging), the power from the energy received from the charger (e.g., the accused product); and

- (ix) practices and provides charging the battery (e.g., battery of the smartphone, macbook, etc.) using the power received from the converter (e.g., converting power from USB to battery charging) and using the battery to power the electronic circuitry (e.g., trackpad, display, etc. of the accused smartphone, macbook, etc.).

22. Further on information and belief, Defendant directly uses the infringing Accused Instrumentalities at least because it assembled the combined infringing elements and makes them collectively available in the United States, including via its Internet domain web pages and/or software applications, as well as via its internal systems and interfaces. Further, and on information and belief, Defendant has directly infringed by using the infringing Accused Instrumentalities as part of its ongoing and regular testing and/or internal legal compliance activities.  Such testing and/or legal compliance necessarily requires Defendant to make and use the Accused Instrumentalities in an infringing

GARTEISER HONEA – TRIAL ATTORNEYS

GARTEISER HONEA – TRIAL ATTORNEYS

manner.  Still further, Defendant is a direct infringer by virtue of its branding and marketing activities, which collectively comprise the sale and offering for sale of the infringing Accused Instrumentalities.

23.    As Figure 1 shows above, Defendant is making, using, and offering for sale the Accused Instrumentalities.

24.    Additionally, upon information and belief, Defendant owns, directs, and/or controls the infringing method operation of the Accused Instrumentalities.

25.    On information and belief, the infringement of the Waverly Patents by Defendant will now be willful through the filing and service of this Complaint.

26.    In addition or in the alternative, Defendant now has knowledge and continues these actions and it indirectly infringes by way of inducing direct infringement by others and/or contributing to the infringement by others of the '246 Patent in the State of California, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, infringing services for use in systems that fall within the scope of the claims of the '246 Patent. This includes without limitation, one or more of the Accused Instrumentalities by making, using, importing offering for sale, and/or selling such services, Defendant injured Waverly and is thus liable to Waverly for infringement of the '246 Patent under 35 U.S.C. § 271.

27.    Now with knowledge of the Waverly Patents, Defendant induces infringement under Title 35 U.S.C. § 271(b).  Defendant will have performed actions that induced infringing acts that Defendant knew or should have known would induce actual infringements. *See Manville Sales Corp. v. Paramount Sys., Inc*., 917 F.2d 544, 553 (Fed.Cir.1990), quoted in *DSU Med. Corp. v. JMS Co*., 471 F.3d 1293, 1306 (Fed.Cir.2006) (*en banc* in relevant part). "[A] finding of inducement requires a threshold finding of direct infringement—

19

either a finding of specific instances of direct infringement or a finding that the accused products necessarily infringe." *Ricoh,* 550 F.3d at 1341 (citing *ACCO Brands, Inc. v. ABA Locks Manufacturer Co.,* 501 F.3d 1307, 1313, (Fed. Cir. 2007).

28.   Plaintiff will rely on direct and/or circumstantial evidence to prove the intent element. *See Fuji Photo Film Co. v. Jazz Photo Corp.,* 394 F.3d 1368, 1377 (Fed. Cir. 2005) ("A patentee may prove intent through circumstantial evidence."); *Water Techs. Corp. v. Calco, Ltd.,* 850 F.2d 660, 668 (Fed. Cir. 1988) ("While proof of intent is necessary, direct evidence is not required; rather, circumstantial evidence may suffice.").

29.   Defendant has taken active steps to induce infringement, such as advertising an infringing use, which supports a finding of an intention for the accused product to be used in an infringing manner. *See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.,* 545 U.S. 913, 932, 125 S. Ct. 2764, 162 L. Ed. 2d 781 (2005) (explaining that the contributory infringement doctrine "was devised to identify instances in which it may be presumed from distribution of an article in commerce that the distributor intended the article to be used to infringe another's patent, and so may justly be held liable for that infringement").

30.   In addition, on information and belief, and based in part upon the clear infringement by the Accused Instrumentalities, Defendant has a practice of not performing a review of the patent rights of others first for clearance or to assess infringement thereof prior to launching products and services.   As such, Defendant has been willfully blind to the patent rights of Plaintiff.

31.   The foregoing infringement on the part of Defendant has caused past and ongoing injury to Plaintiff.   The specific dollar amount of damages adequate to compensate for the infringement shall be determined at trial but is in no event less than a reasonable royalty from the date of first infringement to the expiration of the Waverly Patents.

32.     Each of Defendant's aforesaid activities have been without authority and/or license from Plaintiff.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests the Court enter judgment against Defendant as follows:

1.     Declaring that Defendant has infringed each of the Waverly Patents;

2.     Awarding Plaintiff its damages suffered because of Defendant's infringement of the Waverly Patents;

3.     Enter a judgment awarding treble damages pursuant to 35 U.S.C. §284 for Defendant's willful infringement of one or more of the Waverly Patents;

4.     Awarding Plaintiff its costs, reasonable attorneys' fees, expenses, and interest; and

5.     Granting Plaintiff such further relief as the Court finds appropriate.

## **JURY DEMAND**

Plaintiff demands trial by jury, under Fed. R. Civ. P. 38.

GARTEISER HONEA – TRIAL ATTORNEYS

21

GARTEISER HONEA – TRIAL ATTORNEYS

1

2  Respectfully Submitted

3

4

5  */s/ Christopher A. Honea*
Randall Garteiser

6     California Bar No. 231821
rgarteiser@ghiplaw.com

7  Christopher A. Honea
California Bar No. 232473

8     chonea@ghiplaw.com

9

10  **GARTEISER HONEA, PLLC**

11  119 W. Ferguson Street
Tyler, Texas  75702

12  Telephone: (903) 705-7420
Facsimile: (903) 405-3999

13

14  **ATTORNEYS FOR PLAINTIFF
WAVERLY LICENSING LLC**

15

16

17

18

19

20

21

22

23

24

25

26

27

28